United States District Court
Middle District of Florida
Tampa Division

JEANNE M. ZANDMAN,

> *Plaintiff,*

V.                                                          No. 8:16-CV-258-T-PDB

COMMISSIONER OF SOCIAL SECURITY,

> *Defendant.*

---

## Order Affirming Commissioner's Decision

This is a case under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of the Social Security Administration ("SSA") denying Jeanne Zandman's claim for disability-insurance benefits.[1] She seeks reversal, Doc. 17; the Commissioner, affirmance, Doc. 18.[2] This order adopts the summaries of facts and law in the Administrative Law Judge's ("ALJ's") decision, Tr. 76–84, and in the parties' briefs, Docs. 17, 18, except to the extent stated in this order.

---

[1]The SSA uses an administrative review process a claimant ordinarily must follow to receive benefits or judicial review of her denial. *Bowen v. City of New York*, 476 U.S. 467, 471−72 (1986). A state agency acting under the Commissioner's authority makes an initial determination. 20 C.F.R. §§ 404.900−404.906. If the claimant is dissatisfied with the initial determination, she may ask for reconsideration. 20 C.F.R. §§ 404.907−404.918. If she is dissatisfied with the reconsideration determination, she may ask for a hearing before an Administrative Law Judge ("ALJ"). 20 C.F.R. §§ 404.929−404.943. If she is dissatisfied with the ALJ's decision, she may ask for review by the Appeals Council. 20 C.F.R. §§ 404.967−404.982. If the Appeals Council denies review, she may file an action in federal district court. 20 C.F.R. § 404.981. Section 405(g) provides the basis for the court's jurisdiction.

[2]The Court granted Zandman's request for leave to file a reply to the Commissioner's brief, *see* Docs. 19, 20, but she has not filed one, and the time for doing so has passed.

## I.      Issues

Zandman presents four related issues: (1) whether the ALJ erred in failing to find she has severe mental impairments; (2) whether the ALJ properly evaluated the opinions of Timothy Foster, Ph.D.; (3) whether the ALJ erred in assessing her residual functional capacity ("RFC"); and (4) whether the vocational expert's ("VE's") testimony provided substantial evidence for the ALJ's finding Zandman could perform past relevant work. Doc. 17 at 3–20.

## II.     Background

Zandman is 59 and last worked in July 2012. Tr. 151, 223. She has a general education diploma and experience as a sales clerk, office manager, credit clerk, purchasing agent, collection clerk, and data-entry clerk. Tr. 20, 40–44, 220. She alleges she became disabled in July 2012 from back and neck problems, depression, anxiety, diverticulosis, chronic obstructive pulmonary disease ("COPD"), hand problems, and sleep problems. Tr. 222–23. Her date last insured is June 30, 2013. Tr. 76. She proceeded through the administrative process, failing at each level. Tr. 5–11, 48–89, 92–97, 99–104. This case followed. Doc. 1.

## III.    Opinion Evidence

In November 2012, Zandman saw Dr. Foster for a consultative mental evaluation. Tr. 440–41. She conveyed she has back pain and is uncomfortable around people. Tr. 440. She reported being hospitalized when she was 12 for suicidal ideation but denied such feelings at the time of examination. Tr. 440. On examination, he found:

> Jeanne was able to correctly identify the year, the season, the month, date[,] and day of the week. She was able to correctly identify the state, city[,] and county and type of building where we were located. She related well and pleasantly. She showed no problems sustaining attention. She appears to be of average intelligence. Her mood was self[-]described as "Happy but anxious." Her affect appeared to be anxious.

> She was able to spell the word[ ] "World" backward correctly, as a measure of her concentration. She was able to immediately recall a brief list of 3 common items and recalled it, correctly, after a 5[-]minute delay. But she feels she [ ]forgets things people tell her. She was able to follow a simple 3[-]step instruction. She was able to read and write effectively. She was able to copy a simple design effectively. She does not admit to any hallucinations or delusions. She has no current suicidal ideation or impulse. Her judgment and insight appear to be within normal limits. She had ETOH problems in the past but has been sober just over 22 months. She has lost 60 pounds in the last year due to gall bladder problems.

Tr. 440–41.

> In a section titled "Functional Limits," Dr. Foster stated:

> [Zandman] does not need anyone to remind her to bathe and brush her teeth regularly. She is able to make a sandwich and use the microwave. She can follow a recipe, [and] she can do her own laundry. She has 2 neighbors she talks with almost daily plus she talks with her daughter. She gets anxious around more than just a couple people. She can't wait in line behind 6 people, she'd have to leave, due to anxiety. She can read and understand instructions or a magazine. She feels her memory has not been good for the last f[e]w months. She says she feels anxious all the time. She can drive herself places as needed.

Tr. 441. He opined she can manage money in her own best interest. Tr. 441. He diagnosed her with anxiety, stated she "is stressed by being around people," and assigned a Global Assessment of Functioning ("GAF") scale rating of 45, indicating "serious social limits." Tr. 441.

In December 2012, David Tessler, Psy.D., reviewed the medical evidence, including Dr. Foster's report, and concluded Zandman's mental disorders are not severe. Tr. 63–64. He found she has mild difficulties in maintaining concentration, persistence, or pace; no restrictions of activities of daily living; no difficulties in maintaining social functioning; and no episodes of decompensation of extended duration. Tr. 64. On mild difficulties in maintaining concentration, persistence, or pace, he referred to Zandman's function report indicating she can "follow

instructions[, and] her ability to maintain attention 'depends on subject matter.'" Tr. 64.

## IV.    Hearing Testimony[3]

At the May 2014 hearing, Zandman testified as follows. She does not engage in social activities but visits family once or twice a week. Tr. 24. She gets anxious and does "[n]ot [do] well at all" around large groups. Tr. 35. That was not a problem in the past. Tr. 35. When around large groups, her heart rate accelerates, she gets sweaty palms, and she "just want[s] to back into a corner." Tr. 35. She randomly experiences panic attacks "[a] couple times a week" that last about 20 minutes. Tr. 35–36. When she has a panic attack, her heart rate accelerates, she gets sweaty palms and a sweaty face, and she feels like she will pass out. Tr. 36. She takes Xanax to relieve those symptoms. Tr. 36.

## V.    ALJ's Decision

At step one,[4] the ALJ found Zandman had not engaged in substantial gainful activity from July 31, 2012 (the alleged onset date), to August 7, 2014 (the decision date).  Tr. 78.

At step two, the ALJ found Zandman suffers from severe impairments of COPD, seizure disorder, hernia, gastritis, gastroparesis, abdominal abscess, and diverticulitis. Tr. 78. After discussing Dr. Foster's report, she found Zandman's

---

[3]Because Zandman challenges the ALJ's decision only as it relates to mental impairments, her testimony relating to only those impairments is summarized.

[4]The SSA uses a five-step sequential process to decide if a person is disabled, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her RFC, and (5) there are a significant number of jobs in the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

mental impairments are not severe because "[t]here is no indication that [she] has required any ongoing mental health treatment for management of" the impairments and "medications are controlling [her] sympt[oms]." Tr. 78–79.

At step three, the ALJ found Zandman has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 79. The ALJ considered the "paragraph B" criteria[5] and adopted Dr. Tessler's opinion that Zandman's mental impairments "resulted in no more than mild difficulties with maintaining concentration, persistence[,] or pace with no other limitation in the paragraph 'B' criteria." Tr. 79.

After stating she had considered the entire record, the ALJ found Zandman has the RFC to perform sedentary work with additional physical limitations. Tr. 79–80. In making that RFC finding, the ALJ discussed Zandman's treatment records. Tr. 80–84. She gave little weight to Dr. Foster's opinions, including his GAF scale rating of 45. Tr. 83. She explained:

> Although the claimant reported problems with anxiety and being around others, her symptoms are somewhat controlled with medications. As previously noted, the claimant is able to shop and drive. She further indicated that she visits with family several times a week. The undersigned acknowledges the consultative examiner provided a GAF of 45, but notes the Commissioner has specifically declined to endorse the GAF scale for use in disability programs, and has stated that the GAF scale does not have a direct correlation to the severity

---

[5]To evaluate a mental impairment, an ALJ must evaluate four broad functional areas (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation)—referred to as "paragraph B criteria"—and the extent of any limitation in the first three areas (none, mild, moderate, marked, or severe). 20 C.F.R. § 404.1520a(a) & (c) (eff. June 13, 2011). An ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4).

requirements in our mental disorder listings[.] Accordingly, the undersigned has afforded the GAF score little weight.

…

Little weight is given to the speculative assessment of the consultative psychological examiner, Dr. Foster, who indicated that the claimant would have serious social problems. Although the claimant reported that she is not able to be around crowds of people, she noted that she is able to shop and drive.

Tr. 83. The ALJ gave "significant weight" to Dr. Tessler's opinions. Tr. 83.

At step four, the ALJ found Zandman can perform her past work as a billing clerk, collections clerk, and data-entry clerk as actually and generally performed, and her past work as an office manager and credit clerk as generally performed. Tr. 84. She therefore found no disability. Tr. 84.

## VI.   Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports her findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.*

## VII.   Analysis

### A.   *Whether Substantial Evidence Supports the Finding Zandman's Mental Impairments Are Not Severe*

Zandman argues substantial evidence does not support the ALJ's finding that her mental impairments are not severe because the evidence shows those impairments cause more than minimal functional limitations. Doc. 17 at 6–8. She

6

points to (1) Dr. Foster's consultative report; (2) evidence her doctors acknowledged her generalized anxiety disorder and antisocial personality disorder and prescribed Xanax and Clonazepam for anxiety and panic attacks; and (3) her testimony and her husband's statements supporting she experiences anxiety and panic attacks. Doc. 17 at 6–8. The Commissioner responds substantial evidence supports the ALJ's finding; she properly evaluated Dr. Foster's opinions and Zandman's and her husband's credibility; and, in any event, any error in failing to find severe mental impairments was harmless because she found other severe impairments and proceeded beyond step two. Doc. 18 at 8–13 & n.5.

At step two, an ALJ considers whether a claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is an impairment that significantly limits a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (defining "non-severe impairment").

"Step two is a threshold inquiry." *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986). It "acts as a filter" to eliminate claims involving no substantial impairment. *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). The finding that any impairment is severe satisfies step two, and any failure to identify all impairments that should be severe is harmless. *Id.*; *see also Delia v. Comm'r of Soc. Sec.,* 433 F. App'x 885, 887 (11th Cir. 2011) (concluding substantial evidence did not support ALJ's finding at step two that plaintiff's mental impairments were not severe but concluding the error was harmless because the ALJ found other severe impairments and considered the mental impairments at later steps). Although an ALJ does not have to identify at step two all impairments that should be severe, she must demonstrate she considered at step three all of the claimant's impairments— severe and non-severe—in combination. *Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 825 (11th Cir. 2010). "[A] simple expression of [her] consideration of the combination of impairments constitutes a sufficient statement of such findings." *Id.* (citing *Jones v. HHS,* 941 F.2d 1529, 1533 (11th Cir. 1991)).

Here, because the ALJ found Zandman suffers from other severe impairments at step two and continued with the analysis, any failure to find severe mental impairments is harmless. Her decision shows she considered Zandman's mental impairments at later steps. At step three, she found Zandman has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 79. In the RFC analysis, she discussed medical evidence of Zandman's mental impairments and assigned weight to medical opinions on how those impairments affect her ability to work. Tr. 83. Zandman shows no harm in failing to find her mental impairments severe, so reversal and remand on that basis are unwarranted.

## B.   *Whether the ALJ Erred in Evaluating Dr. Foster's Opinions*

Zandman argues the ALJ failed to properly evaluate Dr. Foster's opinions because (1) she did not discuss relevant factors, such as Dr. Foster's expertise in psychology and disability determinations; (2) she improperly rejected the GAF scale rating; (3) her reasons for giving little weight to Dr. Foster's opinions are legally insufficient and factually inaccurate; and (4) she improperly relied on lack of treatment as evidence her mental impairments are not as severe as Dr. Foster's opinions suggest. Doc. 17 at 8–14. The Commissioner disagrees. Doc. 18 at 11–12, 14–18.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of … impairment(s), including … symptoms, diagnosis and prognosis, what [one] can still do despite impairment(s), and … physical or mental restrictions." 20 C.F.R. § 404.1527(a). Regardless of its source, the SSA "will evaluate every medical opinion" it receives. 20 C.F.R. § 404.1527(c).

An ALJ will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency,

specialization, and any other relevant factor. 20 C.F.R. § 404.1527(c). "[O]pinions of nonexamining, reviewing physicians, … when contrary to those of … examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). But "[t]he law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

The ALJ rejected Dr. Foster's opinions concerning the severity of Zandman's mental impairments based in part on medication controlling her symptoms with no need for ongoing mental-health treatment. Tr. 79. She also found the opinions "speculative" and observed that Zandman's report to Dr. Foster of symptoms indicating serious social anxiety was inconsistent with her statement she can shop and drive and visits family. Tr. 83. And the ALJ rejected the GAF scale rating of 45 because the SSA has declined to endorse use of the GAF scale in disability evaluations. Tr. 83.

Substantial evidence supports those reasons for giving little weight to Dr. Foster's opinions. On the finding medication controls Zandman's anxiety without need for additional treatment, medical records, including those Zandman cites, show that, though she took Xanax to manage anxiety-related symptoms, she never reported symptoms during office visits, denied experiencing symptoms when asked, routinely had normal mental-status examinations, and was told to continue taking Xanax as needed to manage her generalized anxiety disorder. *See* Tr. 237–40, 246–47, 262, 304–05, 377–80, 385–87, 395–96, 398–400, 446–48, 451–53, 455–56, 463–65, 525–38, 540–41, 543–45, 573. Treating providers found her generalized anxiety disorder "stable." Tr. 246–47, 300, 568. Except for a single record from before her alleged onset date stating a doctor had prescribed Paxil (a medication that otherwise rarely appears in medical records) to supplement Xanax, *see* Tr. 401–02, there is no

indication she received additional treatment for, or even complained to treating providers about, her mental impairments during the relevant time period.[6]

On the finding that Dr. Foster's opinions are "speculative," Dr. Foster's report suggests he based his opinions mostly on Zandman's subjective complaints because much of his report describes those complaints.[7] *See* Tr. 440–41. The sole objective finding is his relatively unremarkable observation that Zandman's "affect appear[ed] to be anxious." Tr. 440. Even if Dr. Foster had also reviewed the medical evidence, as discussed, the evidence shows only that she took Xanax and routinely had normal mental-status examinations.

On the finding that Dr. Foster's opinions were inconsistent with Zandman's ability to shop, drive, and visit with family, Zandman testified she shops for groceries once or twice a week by herself and visits with family once or twice a week, Tr. 24, 39; Dr. Foster noted she had reported she could drive as needed, Tr. 441.

Zandman's arguments challenging the ALJ's evaluation of Dr. Foster's opinions fail. She argues the ALJ erred in failing to discuss all factors relevant in evaluating medical-opinion evidence, including Dr. Foster's expertise in psychology and disability evaluation. Doc. 17 at 9. As the Commissioner observes, nothing

---

[6]Zandman emphasizes the doctor's decision to prescribe Paxil "despite concern about interactions between that and her pain medications." Doc. 17 at 8. But the record indicates the doctor mentioned interactions between Paxil and Xanax, not pain medication; he mentioned "benzo," likely a reference to Xanax, Tr. 402, which is, as Zandman explains, a benzodiazepine, *see* Doc. 17 at 7 n.2. The context of the statement also suggests the doctor was referring to the interaction between Paxil and Xanax. Additionally, the doctor did not express "concern" about their interaction but instead merely "advised" Zandman of the interaction and discussed adjusting the Xanax prescription as necessary. *See* Tr. 402.

[7]Zandman does not challenge the ALJ's evaluation of her or her husband's credibility, though she does rely on statements from both of them to support that she experiences significant anxiety-related symptoms. *See* Doc. 17 at 8. Nevertheless, the ALJ properly discredited their statements about the intensity, persistence, and limiting effects of anxiety-related symptoms as inconsistent with evidence showing medication controlled her anxiety without the need for additional treatment. *See* Tr. 79, 83.

requires an ALJ to mention every factor. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) ("[T]he ALJ is not required to explicitly address each of [the] factors [in 20 C.F.R. § 404.1527(c)]. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's opinion."). Instead, the ALJ must "consider" each factor. *See* 20 C.F.R. § 404.1527(c). Nothing in the ALJ's decision indicates she failed to consider Dr. Foster's specialization; indeed, she recognized him as a Ph.D.-level psychologist, *see* Tr. 78, and described him as a "consultative psychological examiner," *see* Tr. 83. That the ALJ did not specifically mention the specialization factor does not warrant reversal and remand.

Zandman argues the ALJ misinterpreted SSA policy in rejecting the GAF scale rating of 45 based solely on the Commissioner's decision to not "endorse" the GAF scale for use in disability evaluation.[8] Doc. 17 at 9–10. Although the ALJ mentioned the GAF scale rating separate from Dr. Foster's report more generally, it is apparent from the ALJ's decision that her assignment of little weight to Dr. Foster's opinions focused on his GAF scale rating. The ALJ rejected Dr. Foster's opinion she "would have serious social problems," Tr. 83, which appears to refer to his description of the assigned GAF scale rating as indicating "serious social limits," *see* Tr. 441. At no other point in his report did he offer an opinion she would have serious social problems. *See* Tr. 440–41. Zandman's assertion that the ALJ relied solely on a misinterpretation of SSA policy is incorrect; she rejected the GAF scale rating based on the same reasons she rejected Dr. Foster's opinions more generally.

---

[8]The former version of American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000), includes the GAF scale used by mental-health practitioners to report "the clinician's judgment of the individual's overall level of functioning" and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." Manual at 32–34. The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale. *Id.* A GAF scale rating of 41−50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. *Id.*

In any event, the ALJ did not misstate SSA policy. The ALJ was correct that, even before the American Psychiatric Association abandoned the GAF scale in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders, "the Commissioner … declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and … indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (internal quotations omitted) (citing 60 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)).

It is also true that, in July 2013, the SSA issued Administrative Message (AM)-13066, providing its adjudicators, including ALJs, with internal guidance regarding the interpretation of GAF scale ratings. Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM–13066 (July 22, 2013) REV (Oct. 14, 2014). AM-13066 acknowledged the Manual eliminated the use of GAF scale but confirmed adjudicators will continue to consider GAF scale ratings as opinion evidence. As with other opinion evidence, however, a GAF scale rating needs supporting evidence to be given much weight. *Id.* According to AM-13066, "the extent to which an adjudicator can rely on the GAF rating as a measure of impairment severity and mental functioning depends on whether the GAF rating is consistent with other evidence, how familiar the rater is with the claimant, and the rater's expertise." *Id.* The SSA cautioned that a "GAF score is never dispositive of impairment severity," and an ALJ should "not give controlling weight to a GAF from a treating source unless it is well[-]supported and not inconsistent with the other evidence." *Id.*

Here, substantial evidence supports the ALJ's decision to give little weight to Dr. Foster's report in its entirety, including the GAF scale rating, as inconsistent with other evidence.

Zandman argues the ALJ's reasons for giving little weight to Dr. Foster's opinions are legally insufficient and factually inaccurate. Doc. 17 at 10–13. The

"speculative" nature of Dr. Foster's opinions was an appropriate reason for the ALJ to reject them. Substantial evidence supports the finding Dr. Foster's opinions were "speculative" because neither his observations nor the evidence of Zandman's treatment supported those opinions. His conclusion she would have serious social problems could reasonably be deemed speculative because it was partially based on the assumption that Zandman accurately described her symptoms. The ALJ also properly relied on Zandman's ability to shop for groceries, which undermines her reports (and Dr. Foster's opinions based on those reports) that she experiences significant anxiety around large groups of people. Although the significance of Zandman's ability to drive is unclear given that driving is not an inherently social activity, that alone is insufficient to conclude the ALJ erred in evaluating Dr. Foster's opinions.

Zandman argues the ALJ erred in relying in part on her lack of treatment because he did not consider that she did not have insurance and could not afford treatment. Doc. 17 at 13–14. That argument has several flaws. First, the ALJ did not rely on the absence of treatment, but rather on the absence of any apparent *need* for treatment. *See* Tr. 79 ("There is no indication that the claimant has required any ongoing mental health treatment for management of her mental diagnose[s]."). In other words, she found, based on substantial evidence, that the record did not support she needed treatment beyond medication management. Second, Zandman did not testify that she lacked health insurance; instead, in explaining why she declined to submit to an electroencephalogram ("EEG") after a reported seizure, she stated she had had health insurance at the time but that it had only covered medication. Tr. 20–21. Reading her testimony in context, it is unclear whether her insurance literally covered only costs of medication or whether she meant it did not cover more expensive procedures such as the EEG. Lack of insurance is not the same thing as inability to afford treatment. Even assuming she did not have coverage or money for other types of mental-health treatment, such as therapy, she points to no evidence indicating her providers thought she needed them.

Because the ALJ provided good reasons supported by substantial evidence for giving little weight to Dr. Foster's opinions, reversal and remand on that basis are unwarranted.[9]

## C.   *Whether Substantial Evidence Supports the ALJ's RFC Finding*

Zandman argues the ALJ erred by failing to include mental limitations in the RFC finding despite having found at step two that her mental impairments caused mild difficulties with maintaining concentration, persistence, or pace. Doc. 17 at 15–18. The Commissioner responds substantial evidence supports the ALJ's finding Zandman has no mental limitations. Doc. 18 at 13–14.

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The SSA uses the RFC at step four to decide if she can perform any past relevant work and, if not, at step five with other factors to decide if there are other jobs in significant numbers in the national economy she can perform. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, an ALJ must consider all of her medically determinable impairments, both severe and nonsevere. 20 C.F.R. § 404.1545(a)(2).

Substantial evidence supports the ALJ's RFC finding. The medical evidence shows Zandman reported no symptoms arising from her mental impairments to her treating providers, and mental status examinations routinely showed no psychological problems. The ALJ discussed Dr. Foster's mental-status-examination

---

[9]Zandman summarily argues that the ALJ erred in giving more weight to Dr. Tessler's opinions than Dr. Foster's opinions without explaining why. *See* Doc. 17 at 14 n.7. As discussed, "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *See Sryock*, 764 F.2d at 835 (quoted). Moreover, an ALJ's determination may be implicit, but the "implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). It is clear from the ALJ's decision she gave more weight to Dr. Tessler's opinions because she found them more consistent with the other evidence.

14

findings in detail, including his observation she "had no problems sustaining attention" and "was able to recall items after a five-minute delay as well as follow simple instructions." Tr. 79 (citing Tr. 440–41).

Zandman's argument to the contrary fails. The ALJ did not err by not including mental limitations despite finding Zandman experiences "no more than mild difficulties" in maintaining concentration, persistence, or pace. That finding, standing alone, does not mean those difficulties translated into work-related functional limitations. Zandman points to no evidence that could support finding any such limitation. The basis for the ALJ's finding of "no more than mild difficulties" supports no additional limitations. The ALJ adopted Dr. Tessler's opinion on that point. *See* Tr. 79. Dr. Tessler concluded Zandman has mild difficulties with concentration, persistence, or pace based only on Zandman's statement in a function report that the time she can pay attention to something "[d]epends on [the] subject matter." *See* Tr. 64, 174. Notably, on the same form, Zandman did not indicate her impairments affect her memory, concentration, or ability to complete tasks. *See* Tr. 64. Zandman's statement about her ability to maintain attention does not change that substantial evidence supports the ALJ's finding she has no work-related limitations in maintaining concentration, persistence, or pace.

Because substantial evidence supports the ALJ's finding Zandman has no functional limitations arising from mild difficulties in maintaining concentration, persistence, or pace, reversal and remand on that basis are unwarranted.

## D. *Whether the VE's Testimony Provided Substantial Evidence for the ALJ's Finding Zandman Could Perform Past Relevant Work*

Zandman argues the ALJ's failure to include mental functional limitations resulted in an incomplete hypothetical to the VE, which resulted in an erroneous finding she could perform past relevant work. Doc. 17 at 18. She argues her past jobs are skilled or semi-skilled and "place a high premium on focus and accuracy," so "*any* impairment in the ability to function socially or maintain concentration, persistence,

or pace would impact the ability to perform these positions." Doc. 17 at 16–18 (emphasis in original). The Commissioner responds the ALJ's RFC finding included all functional limitations the evidence supported, and the hypothetical question to the VE mirrored the RFC, so the VE's testimony provides substantial evidence for the ALJ's decision. Doc. 18 at 20–21.

At step four, an ALJ must decide whether the claimant can perform past relevant work in light of her RFC. 20 C.F.R. § 404.1560(b). An ALJ may use a VE's testimony for that determination. 20 C.F.R. § 404.1560(b)(2). For a VE's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes all of the claimant's impairments. *Winschel v. Comm'r*, 631 F.3d 1176, 1180 (11th Cir. 2011).

Because the ALJ did not err in assessing Zandman's RFC, and because the hypothetical question the ALJ posed was identical to that RFC assessment, *compare* Tr. 79–80 *with* Tr. 44–45, the ALJ did not pose an incomplete hypothetical. That limitations in social functioning or maintaining concentration, persistence, or pace might have precluded Zandman from performing her past relevant work is immaterial because substantial evidence supports the ALJ's RFC finding excluding any such limitations. The VE's testimony therefore provided substantial evidence for the ALJ's finding Zandman could perform her past work as a billing clerk, collections clerk, data-entry clerk, office manager, and credit clerk.[10]

Because the VE's testimony provided substantial evidence for the ALJ's finding Zandman can perform past relevant work, reversal and remand on that basis are unwarranted.

---

[10]Having concluded the ALJ presented a complete hypothetical question to the VE, the Court need not address Zandman's arguments that (1) her alleged inability to perform any of her past jobs would require a finding of disability based on the Medical-Vocational Guidelines and (2) the ALJ would be required to consult a VE on remand because she has nonexertional limitations. *See* Doc. 17 at 18–20.

## VIII.  Conclusion

The Court **affirms** the Commissioner's decision denying Zandman's claim for benefits and directs the clerk to enter judgment in favor of the Commissioner and close the file.

**Ordered** in Jacksonville, Florida, on March 31, 2017.

_____

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of Record